IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRENDA F. PARDEE,

                              Plaintiff,

          vs.                                    Civil Action No.
                                                 3:05-CV-1595 (NAM/DEP)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

HINMAN, HOWARD LAW FIRM                EUGENE D. FAUGHNAN, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

FOR DEFENDANT

HON. GLENN T. SUDDABY                  WILLIAM H. PEASE, ESQ.
United States Attorney for the         Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

[1]     Plaintiff's complaint, which was filed on December 23, 2005, named Jo
Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in
order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL          BARBRA L. SPIVAK, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                  KARLA J. GWINN, ESQ.
                                    Assistant Regional Counsel

DAVID E. PEEBLES
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Brenda F. Pardee, who suffers from various medical ailments including, principally, migraine headaches and a condition affecting her right shoulder and neck, has commenced this proceeding seeking judicial review of an agency determination that she is not disabled, within the meaning of the Social Security Act, and thus denying her application for disability insurance benefits.  In support of her challenge plaintiff maintains that the findings of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the affect that she is not disabled, was the product of improper rejection of contrary opinions of her treating physicians and of her subjective testimony regarding the limitations presented by her conditions, and further that the ALJ's reliance upon the testimony of a vocational expert, who opined that notwithstanding her limitations there is available work which plaintiff is capable of performing, was flawed since it was based

upon hypothetical questions which do not approximate her medical condition and resulting limitations.

Having carefully reviewed the record in the light of plaintiff's arguments, applying the requisite deferential standard, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, I recommend that defendant's motion for judgment on the pleadings dismissing plaintiff's administrative challenge to the Commissioner's determination be granted.

I.    BACKGROUND

Plaintiff was born on March 5, 1952; at the time of the hearing in this matter she was fifty-one years old.[2]  Administrative Transcript at pp. 108, 462.  Plaintiff is married and lives together with her husband in a home which is located in Bloomville, New York.  AT 110, 462-63.  While the plaintiff and her husband have children, none currently reside with them.  AT 462.

Plaintiff holds a high school general equivalency diploma ("GED"), and additionally is certified as a nursing assistant.  AT 111, 148, 226, 463-

_____

[2]      Portions of the administrative transcript filed by the Commissioner and consisting of a compilation of evidence and proceedings before the agency, Dkt. No. 4, will be cited herein as "AT ___."

64. Beyond this plaintiff has had no further specialized educational training, and in particular has taken no college courses. AT 463-64.

For several years prior to March of 1999, plaintiff was employed as a certified nurses aide in the Delaware County Countryside Care Center, a facility apparently funded by Delaware County. AT 111, 148, 224, 465. Plaintiff stopped working in that position, however, after suffering a work-related injury on March 26, 1999 caused when a sheet being used by her to lift a patient gave way and ripped. AT 192, 224. As a result of the incident she experienced both a re-injury of her right shoulder, resulting in renewed pain which progressively worsened over time, as well as a sudden onset of pain on the right side of her neck.[3] AT 200.

Following her injury, plaintiff was initially seen by Dr. Hermon Peiris on April 5, 1999, and again three days later. AT 191. In a report submitted in connection with plaintiff's workers' compensation claim stemming from the incident, Dr. Peiris noted that plaintiff demonstrated "[m]arked limitation of movement" and that Darvocet and Flexeril were prescribed. AT 191.

---

[3]     Prior to her March, 1999 accident, plaintiff suffered multiple work-related injuries, including one which required surgical repair of a rotator cuff tear on March 16, 1993. AT 224. Plaintiff has  also undergone carpal tunnel release surgery, in 1989 for the left hand, and later in 1992 on the right. AT 224. The record does not reflect the existence of any lingering effects of this latter condition.

Plaintiff was also seen by Dr. William Reiter, beginning on or about May 4, 1999, based upon her complaints of persistent right shoulder pain. AT 198-200. In a report of that first visit, Dr. Reiter notes that x-rays were taken at O'Connor Hospital on April 9, 1999, revealing the residuals of previous arthroscopic and open subacromial decompression and rotator cuff repair, as well as "[d]egenerative changes. . . about the right acromioclavicular joint[,]" and "some narrowing of humeral head to acromion space." AT 200. Based upon his examination Dr. Reiter noted plaintiff's history of rotator cuff repair, but indicated that it did not appear to symptomatic, and recorded clinical findings suggesting "a thoracic outlet type syndrome, right." *Id*. X-rays taken on that day of plaintiff's cervical spine area yielded normal results. AT 201. Dr. Reiter initially prescribed a conservative course of treatment which included physical therapy and use of analgesic, muscle relaxant, and anti-inflammatory medications. AT 199.

After determining that the treatment initially prescribed had not yielded improvement in plaintiff's condition, Dr. Reiter referred her to Dr. Anthony Cicoria for a second opinion.[4] AT 255-58. Plaintiff was seen by

---

[4]      It was Dr. Cicoria who performed the earlier surgery to repair plaintiff's rotator cuff tear. AT 200, 258.

Dr. Cicoria on March 1, 2000, May 17, 2000, July 18, 2000, and

September 13, 2000.  AT 255-258.  In a chart note of the July 18, 2000

visit, Dr. Cicoria observed that a functional capacity evaluation of the

plaintiff had been completed, revealing that at the time she was capable of

engaging in "full time of employment in a sedentary work capacity", as well

as recording a belief that vocational rehabilitation was required.  AT 256;

*see* AT 228-242.  In the report of the last visit, which occurred on

September 13, 2000, Dr. Cicoria noted that plaintiff had completed

vocational rehabilitation and was working three days a week in a

"sedentary light duty capacity", additionally reporting that with

acupuncture, she had obtained significant pain relief.  AT 255.

Based upon her complaints of persistent pain, plaintiff was referred

by Dr. Reiter to Dr. Patrick Germain who, based upon his examination,

diagnosed the plaintiff as suffering from myofascial pain syndrome,

centered in the right upper trapezius, as well as right occipital neuralgia.

AT 243-54.  Plaintiff was seen by Dr. Germain on six occasions between

March 2, 2000 and July 31, 2000, and underwent trigger point injections

on those occasions.  *Id.*  By all accounts those treatments were successful

in reducing plaintiff's pain levels, and notes of the last visit on July 31,

2000 reflect that plaintiff was directed to return to the clinic only as

-6-

needed.  AT 243.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits with the agency on July 23, 2001.  AT 108-110.  Following the denial of that application on September 27, 2001, AT 22-26, a hearing was conducted by ALJ Carl E. Stephan, beginning on May 9, 2003 and continuing to July 23, 2003, to address plaintiff's claim of entitlement to Social Security benefits.  AT 430-527.  During that hearing, testimony was elicited from the plaintiff as well as Peter Monsey, a vocational expert engaged by the agency to assist in the disability analysis.  *Id.*

Following the hearing, ALJ Stephan issued a written decision, dated September 16, 2003, announcing his determination.  AT 11-21.  In that decision ALJ Stephan outlined his findings, based upon a *de novo* review of the available evidence, applying the now familiar five-step test for determining the issue of disability.  *Id.*  At step one of the disability algorythm, ALJ Stephan concluded that plaintiff had not engaged in substantial gainful employment during the relevant times.[5]  AT 12.

---

        [5]    Although plaintiff's last meaningful employment ended in March of 1999, she was briefly employed on a part-time basis during August and September of 2000 in an office setting.  AT 148, 464.

Proceeding to the second and third steps of the controlling test, ALJ Stephan concluded that plaintiff suffers from impairments of sufficient severity to substantially limit her ability to perform work related functions, including right shoulder pain, neck pain, and migraine headaches, but concluded that those impairments were not, either individually or in combination, sufficiently severe to meet or equal any of the listed, presumptively disabling conditions set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 12-13.

After reviewing the available medical evidence regarding her condition, ALJ Stephan next determined plaintiff's residual functional capacity ("RFC"), concluding that despite her impairments and the resulting limitations presented she retains the ability to perform light work, with no limitations upon her ability to stand, sit and walk, provided that she is not required to lift more than ten pounds occasionally, or to climb ladders, scaffolds, or engage in other activities that would entail the use of her arms, and further that no more than rare overhead reaching with the right dominant upper extremity, no more than occasional reaching in all directions with the right dominant upper extremity, and no more than occasional manipulation with the right, dominant upper extremity, are involved.  AT 17.  Applying that RFC finding, guided by the testimony of a

vocational expert, the ALJ concluded that plaintiff is unable to perform her

past relevant work, described by the expert as semi-skilled and medium in

its exertional requirements.  The ALJ further concluded, in reliance upon

the medical vocational guidelines set forth in the regulations (the "grid"),

20 C.F.R. Pt. 404, Subpt. P, App. 2, as a framework, that a finding of no

disability was warranted.  AT 17-19.  That finding was buttressed by

opinions offered by vocational expert Monsey who, when presented with

hypothetical questions incorporating the ALJ's RFC findings, testified that

there are jobs existing in sufficient numbers in the national and local

economies, including as a counter clerk (photo finishing), a furniture rental

clerk, a call out operator, and a surveillance systems monitor, which the

plaintiff is capable of performing.  AT 18-19.  In arriving at his

determination ALJ Stephan expressly rejected, as not fully credible,

plaintiff's testimony of debilitating pain precluding her ability to perform

work related functions.  AT 19.

     The ALJ's opinion became a final determination of the agency when,

on November 18, 2005, the Social Security Administration Appeals

Council denied plaintiff's request for review of that decision.  AT 3-6.

     B.    This Action

     Plaintiff commenced this action on December 23, 2005.  Dkt. No. 1.

Issue was thereafter joined on April 10, 2006 by the Commissioner's filing

of an answer, accompanied by an administrative transcript of proceedings

and evidence before the agency.  Dkt. Nos. 3, 4.  With the filing of

plaintiff's brief on May 25, 2006, Dkt. No. 5, and that on behalf of the

Commissioner on July 10, 2006, Dkt. No. 6, the matter is now ripe for

determination, and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Scope of Review

    A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*

*v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

---

[6]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand,

while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

　　　B.　　Disability Determination - The Five Step Evaluation Process

　　　The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).
In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final

matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence In This Case

In support of her challenge to the Commissioner's determination plaintiff raises several grounds, arguing that 1) certain opinions of her treating physicians, including Dr. Herman Peiris and Dr. William S. Rieter, were improperly discounted, and contrary opinions of non-examining professionals were impermissibly accorded greater deference than those of treating sources; 2) the ALJ improperly rejected plaintiff's subjective complaints of disabling pain, without either evidentiary support or proper explanation; 3) the ALJ's RFC findings are not supported by substantial evidence; and 4) the Commissioner failed to meet his burden at step five

of the disability calculus, despite eliciting testimony from a vocational

expert, since the hypotheticals posed to that expert did not approximate

plaintiff's proven circumstances.  As relief, plaintiff seeks a remand of the

matter to the Commissioner, with a directed finding of disability, for the

limited purpose of calculating benefits owed.

> 1.   Treating Physicians

Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp. 2d at 316.[7]  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record, including

---

[7]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28,

32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the

form of contradictory medical evidence, their resolution is properly

entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

　　　In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  *Schisler v. Sullivan*, 3 F.3d

563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

　　　When a treating physician's opinions are repudiated, the ALJ must

provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  Failure to apply the appropriate legal standards for

considering a treating physician's opinions is a proper basis for reversal

and remand, as is the failure to provide reasons for rejection of his or her

opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-

17.

　　　It is true that the record contains an RFC assessment,  prepared by

Todd Mansfield, P.T., the plaintiff's physical therapist, which is significantly

more restrictive than the RFC finding made by the ALJ in this instance.

AT 346-49.   That assessment form, for example, reflects the therapist's belief that plaintiff is unable to lift and carry more than ten pounds in general; should avoid all repetitive activity; is able to stand and/or walk, and can stand, for a total of only two hours per day in an eight hour work day, and can sit for only a similar period in a eight hour work day.  AT 346-47.  Undeniably, these findings are not entirely consistent with the ALJ's conclusions that plaintiff retains the capacity to perform light work, with additional restrictions.[8]

As plaintiff readily acknowledges, the RFC findings upon which she heavily relies would not in and of themselves would not be worthy of

---

[8]      By regulation light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

consideration as the opinions of a treating source, in light of an evaluator's status of a physical therapist.  *See* 20 C.F.R. § 404.1513(d).  Plaintiff argues, however, that the therapist's assessment was apparently reviewed by one of plaintiff's treating physicians, Dr. Peiris, and confirmed by him at least to some degree, thus elevating the assessment in stature and warranting treating source deference.  AT 345, repeated at AT 350.  Despite Dr. Peiris' rather tepid endorsement of the therapist's opinions the ALJ was correct in regarding it as of limited value, since on its face the treating physician's approval fails to reference any particular portion of the assessment or to make a function-by-function analysis, instead merely expressing Dr. Peiris' opinion, "*tending*" to agree with the therapist's findings.  *Id.* (emphasis added).

Significantly, the RFC evaluation of plaintiff's circumstances recorded by Dr. Reiter, her orthopedic surgeon, are generally consistent with the ALJ's findings, and thus were not rejected, as argued by the plaintiff.  While plainly, Dr. Reiter has opined that plaintiff suffers from some degree of limitation in her right upper extremity, *see, e.g.,* AT 327, he states in his RFC findings that plaintiff is capable of lifting up to ten pounds occasionally, though less than ten pounds frequently; experiences no limitations in her ability to stand and/or walk, or to sit; is restricted in

connection with her range of motion by her right shoulder impingement; should never climb; and should be limited in terms of balancing, kneeling, crouching and crawling to only occasional engaging in those activities. AT 323-27.  Additionally, Dr. Reiter has also noted discerned limitations in plaintiff's ability to reach and engage in gross manipulation, but has reported no further limitations arising from her conditions.  *Id.*  Those opinions are largely congruent with the ALJ's RFC determination, which mirrors many of Dr. Reiter's findings.  Accordingly, not only were Dr. Reiter's opinions not rejected by the ALJ, as plaintiff now argues, but in fact they lend considerable support to his RFC finding.

### 2.  Plaintiff's Subjective Testimony

In support of her challenge to the Commissioner's determination, plaintiff also alleges that the ALJ's findings resulted from the improper and unexplained rejection of her claims of limitations due to the disabling pain which she experiences.   Plaintiff's brief, however, provides no specific references to her hearing testimony or other portions of the record which are contrary to the ALJ's RFC findings, and thus were at least implicitly rejected or discounted by him.[9]

_____

[9]      It would be most helpful to reviewing courts faced with similar arguments regarding the rejection of claimant pain complaints if agency ALJ's were encouraged to inquire during administrative hearings whether there is any claim that the plaintiff cannot work as a result of limitations caused by pain and, if so, to require specific

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment

---

testimony concerning the extent of the claimant's pain and the resulting limitations. Unfortunately, this does not appear to be a regular practice of most ALJs, and no such inquiries were made in this instance.

which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[10]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

    After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and

---

    [10]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

During the hearing plaintiff intimated that she experiences disabling pain which precludes her from working.  *See, e.g.* AT 467.  Plaintiff also testified that she aches all over, though mostly in her right shoulder and upper back area, requiring her to take Vioxx, a pain reliever, on a daily basis as well as Flexeril, as needed at least one to two times per week to address more severe pain.  AT 467-68.  Plaintiff also testified to taking Zoloft in order to address her depression.  AT 467.  Plaintiff has not, however, indicated what work-related limitations result from the pain which she experiences.

It is fairly evident that the plaintiff does suffer from some degree of discomfort as a result of her various medical conditions.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In his decision, ALJ Stefan addressed plaintiff's claims of pain but noted plaintiff's acknowledgment to her care provider that her medications have helped to relieve her symptoms, and cause her no side affects.  AT 19.  The ALJ also recounted plaintiff's daily activities, found by him to be inconsistent with the extent of pain testified to by her.  AT 19.  These findings are fully supported by the record and provide substantial evidence for the ALJ's rejection of plaintiff's subjective pain complaints, even assuming that they tend to support her contention that the pain which she experiences precludes her from performing work-related functions.

　　　　　3.　　RFC

Plaintiff next argues that the ALJ's RFC finding is not supported by substantial evidence in the record.  A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit,

stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b),

404.1569a.  Nonexertional limitations or impairments, including

impairments which result in postural and manipulative limitations, must

also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20

C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC

determination, an ALJ must specify those functions which the claimant is

capable of performing; conclusory statements concerning his or her

capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150

(citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can

withstand judicial scrutiny only if there is substantial evidence in the record

to support each requirement listed in the regulations.  *Martone*, 70 F.

Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10

(E.D.N.Y. 1997).

        In this instance I have already reviewed at least one assessment of

plaintiff's treating orthopedist, Dr. Reiter, and found it to be consistent with

the ALJ's RFC finding.  While there is other evidence in the record that

similarly supports that RFC determination, the presence of opinions of a

treating source consistent with the determination suffices to provide

substantial evidence for that determination.  *See Soto v. Barnhart*, 242 F.

Supp. 2d 251, 255-56 (W.D.N.Y. 2003) (indicating that, in determining a

claimant's RFC, the opinions of treating physicians are entitled to

controlling weight).

        4.    <u>Vocational Testimony</u>

     The last argument raised by the plaintiff concerns the ALJ's reliance

upon testimony of the vocational expert in this action.

     It is well-established that elicitation of testimony from a vocational

expert is a proper means of fulfilling the agency's burden at step five of the

disability test to establish the existence of jobs in sufficient numbers in the

national and regional economy that plaintiff is capable of performing.

*Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas v.*

*Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); *Dwyer v. Apfel*, 23 F.

Supp.2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*,

94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966.

Use of hypothetical questions to develop the vocational expert's testimony

is also permitted, provided that the questioning precisely and

comprehensively includes each physical and mental impairment of the

claimant accepted as true by the ALJ.  *Varley v. Sec'y of Health & Human*

*Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  If the factors set forth in the

hypothetical are supported by substantial evidence, then the vocational

expert's testimony may be relied upon by the ALJ in support of a finding of no disability. *Id.*

In this instance the hypothetical questions posed to the vocational expert are well supported by evidence in the record. The ALJ's hypothetical included characteristics associated with his RFC finding which, I have already found, was supported by substantial evidence in the record. Based upon the hypothetical presented, the vocational expert concluded that plaintiff was capable of performing four designated jobs notwithstanding her limitations. While plaintiff challenges the ALJ's failure to state, in his hypothetical, that the plaintiff is extremely limited in her ability to perform most activities with her right upper extremity, in fact the vocational expert was told that the hypothetical individual "could only rarely do any overhead reaching. They could only occasionally reach in other directions with the right upper extremity", further clarifying that the job should entail only occasional reaching with the right upper extremity and occasional repetitive use of that extremity. AT 483. This portion of the hypothetical posed to the expert is consonant with the evidence in the record and the ALJ's RFC finding.

To further buttress her argument in this regard, though without citing any supporting authority, plaintiff offers the naked assertion that the jobs

identified by the vocational expert would out of necessity require usage of

upper extremities.  *See* Plaintiff's Brief (Dkt. No. 5) at 20.  This contention,

devoid of evidentiary or legal support, is simply insufficient to undermine

the opinion of a vocational expert to the effect that despite the limitations

associated with the plaintiff's condition, and particularly her inability to

make more than occasional use of her right upper extremity, she is

nonetheless able to perform those jobs.   This argument, then, provides no

basis to set aside the Commissioner's determination.

IV.    SUMMARY AND RECOMMENDATION

Based upon a careful review of the record in this case, I find that the

ALJ properly determined the plaintiff's RFC, and that finding is supported

by substantial evidence in the record including, notably, the opinion of one

of plaintiff's own treating sources.  In arriving at that RFC determination

and his ultimate finding of no disability, the ALJ also properly rejected

plaintiff's subjective complaints of pain, and explained his rationale for

doing so in his opinion.  And, applying the RFC finding to the grid, used as

a framework and supplemented by testimony of a vocational expert, the

ALJ properly concluded that plaintiff is not disabled and thus does not

qualify for the Social Security benefits sought in her application.

Accordingly, it is hereby

RECOMMENDED, that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.


Dated:      November 9, 2007
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge