UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRENDA F. PARDEE,

                                **Plaintiff,**

   vs.                                                      05-CV-1595
                                                             (NAM/DEP)

**MICHAEL J. ASTRUE\*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

Hinman, Howard & Kattell, LLP            Eugene D. Faughnan, Esq.
700 Security Mutual Building
80 Exchange Street
Binghamton, New York 13902-5250
Attorney for Plaintiff

Andrew T. Baxter                             William H. Pease, Esq.
United States Attorney for
the Northern District of New York
P.O. Box 7198-
100 South Clinton Street
Syracuse, New York 13261-7198

      \*\* On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in this action.

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

     Plaintiff Brenda Pardee brings the above-captioned action pursuant to 42 U.S.C. § 405(g)

of the Social Security Act, seeking a review of the Commissioner of Social Security's decision to

deny her application for disability benefits. This matter was referred to United States Magistrate Judge David E. Peebles for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.3(d). Magistrate Judge Peebles recommended that this Court enter judgment on the pleadings affirming the Commissioner's decision denying disability and dismissing plaintiff's claims. Presently before the Court is plaintiff's objection to the Report and Recommendation.[1]

## II.     FACTUAL BACKGROUND

Plaintiff has not objected to the Magistrate Judge's recitation of the background in this case. Accordingly, the Court adopts the portion of the Report and Recommendation entitled "Background" in its entirety:

> Plaintiff was born on March 5, 1952; at the time of the hearing in this matter she was fifty-one years old.[2] Administrative Transcript at pp. 108, 462. Plaintiff is married and lives together with her husband in a home which is located in Bloomville, New York. AT 110, 462-63. While the plaintiff and her husband have children, none currently reside with them. AT 462.
>
> Plaintiff holds a high school general equivalency diploma ("GED"), and additionally is certified as a nursing assistant. AT 111, 148, 226, 463-64. Beyond this plaintiff has had no further specialized educational training, and in particular has taken no college courses. AT 463-64.
>
> For several years prior to March of 1999, plaintiff was employed as a certified nurses aide in the Delaware County Countryside Care Center, a facility apparently funded by Delaware County. AT 111, 148, 224, 465. Plaintiff stopped working in that position, however, after suffering a work related injury on March 26, 1999 caused when a sheet being used by her to lift a patient gave way and ripped. AT 192, 224. As a result of the incident she experienced both a re-injury of her right shoulder, resulting in renewed pain which progressively worsened over time, as well as a

---

[1] Defendant has not submitted a response to Plaintiff's Objections.

[2] Portions of the administrative transcript filed by the Commissioner and consisting of a compilation of evidence and proceedings before the agency, Dkt. No. 4, will be cited herein as "AT ___."

sudden onset of pain on the right side of her neck.[3] AT 200.

Following her injury, plaintiff was initially seen by Dr. Hermon Peiris on April 5, 1999, and again three days later. AT 191. In a report submitted in connection with plaintiff's workers' compensation claim stemming from the incident, Dr. Peiris noted that plaintiff demonstrated "[m]arked limitation of movement" and that Darvocet and Flexeril were prescribed. AT 191.

Plaintiff was also seen by Dr. William Reiter, beginning on or about May 4, 1999, based upon her complaints of persistent right shoulder pain. AT 198-200. In a report of that first visit, Dr. Reiter notes that x-rays were taken at O'Connor Hospital on April 9, 1999, revealing the residuals of previous arthroscopic and open subacromial decompression and rotator cuff repair, as well as "[d]egenerative changes. . . about the right acromioclavicular joint[,]" and "some narrowing of humeral head to acromion space." AT 200. Based upon his examination Dr. Reiter noted plaintiff's history of rotator cuff repair, but indicated that it did not appear to symptomatic, and recorded clinical findings suggesting "a thoracic outlet type syndrome, right." *Id*. X-rays taken on that day of plaintiff's cervical spine area yielded normal results. AT 201. Dr. Reiter initially prescribed a conservative course of treatment which included physical therapy and use of analgesic, muscle relaxant, and anti-inflammatory medications. AT 199.

After determining that the treatment initially prescribed had not yielded improvement in plaintiff's condition, Dr. Reiter referred her to Dr. Anthony Cicoria for a second opinion.[4] AT 255-58. Plaintiff was seen by Dr. Cicoria on March 1, 2000, May 17, 2000, July 18, 2000, and September 13, 2000. AT 255-258. In a chart note of the July 18, 2000 visit, Dr. Cicoria observed that a functional capacity evaluation of the plaintiff had been completed, revealing that at the time she was capable of engaging in "full time of employment in a sedentary work capacity", as well as recording a belief that vocational rehabilitation was required. AT 256; *see* AT 228-242. In the report of the last visit, which occurred on September 13, 2000, Dr. Cicoria noted that plaintiff had completed vocational rehabilitation and was working three days a week in a "sedentary light duty capacity", additionally reporting that with acupuncture, she had obtained significant pain relief. AT 255.

Based upon her complaints of persistent pain, plaintiff was referred by Dr. Reiter to Dr. Patrick Germain who, based upon his examination, diagnosed the plaintiff as suffering from myofascial pain syndrome, centered in the right upper trapezius, as

---

[3] Prior to her March 1999 accident, plaintiff suffered multiple work-related injuries, including one which required surgical repair of a rotator cuff tear on March 16, 1993. AT 224. Plaintiff has also undergone carpal tunnel release surgery, in 1989 for the left hand, and later in 1992 on the right. AT 224. The record does not reflect the existence of any lingering effects of this latter condition.

[4] It was Dr. Cicoria who performed the earlier surgery to repair plaintiff's rotator cuff tear. AT 200, 258.

3

>well as right occipital neuralgia. AT 243-54. Plaintiff was seen by Dr. Germain on six occasions between March 2, 2000 and July 31, 2000, and underwent trigger point injections on those occasions. *Id*. By all accounts those treatments were successful in reducing plaintiff's pain levels, and notes of the last visit on July 31, 2000 reflect that plaintiff was directed to return to the clinic only as needed. AT 243.

(Report and Recommendation, Dkt. No. 8, pp. 3-7).

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

To be eligible for Social Security disability benefits, a claimant must establish "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

>"In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since her alleged onset date. AT. 12. At step two, the ALJ determined that plaintiff's right shoulder pain, neck pain and migraine headaches were severe. AT. 12. At step three, the ALJ concluded that plaintiff's impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations. AT. 12. The ALJ next found that plaintiff retained the residual

4

functional capacity ("RFC") to, "perform a wide limited range of light work in that impose [sic] no limitations on the claimant's ability to stand, sit and walk, and only requires her to occasionally lift up to 10 lbs., does not require climbing, ladders, scaffolds or any other activity that would require her to use her arms, no more than rare overhead reaching with the right dominant upper extremity, no more than occasional reaching in all directions with her right dominant upper extremity and no more than occasional frequent fine manipulations with the right, dominant upper extremity". AT. 17.  Therefore, at step four, the ALJ concluded that plaintiff was not capable of meeting the exertional demands of her past relevant work as a certified nursing assistant.  AT. 18.  Since plaintiff's ability to perform all or substantially all of the requirements of light work was impeded by additional exertional and/or non exertional limitations, the ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform.  Based upon the vocational expert's testimony, the ALJ concluded at step five, that there were a significant number of jobs in the regional and national economy that plaintiff could perform, such as work as a counter clerk (photo-finishing), order clerk, furniture rental clerk, callout operator and surveillance systems monitor.  AT. 21.  The ALJ concluded that plaintiff was not disabled and denied her application for SSI benefits.  The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  This action followed.

IV.     **REPORT AND RECOMMENDATION**

In the Report and Recommendation, Magistrate Judge Peebles found that: (1) the ALJ's determination with regard to plaintiff's RFC was supported by substantial evidence including the opinion of one of plaintiff's treating physicians; (2) the ALJ properly rejected plaintiff's

subjective complaints of pain and explained his rationale for doing so; and (3) the ALJ properly utilized the grids as a framework and supplemented with the testimony of a vocational expert to conclude that plaintiff was not disabled.  Presently before the Court are plaintiff's objections to the Report and Recommendation.

**V.      DISCUSSION**

**A.      Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether plaintiff is disabled.  Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and citation omitted).  An ALJ is obligated to develop the record regardless of whether claimant is represented by counsel.  *See Shaw*, 221 F.3d at 131 (citations omitted).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects.  Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters.  *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  The Court will address Plaintiff's objections accordingly.

Plaintiff objects to the Magistrate's Report and Recommendation on four grounds:  (1) that the Magistrate Judge erroneously found that the ALJ's RFC determination was largely congruent with the findings of Dr. Reiter; (2) the ALJ improperly discounted the opinions of Dr. Peiris; (3) the ALJ's RFC determination is not supported by substantial evidence; and (4) the ALJ presented an improper hypothetical to the vocational expert and therefore, the Commissioner failed to sustain his burden at Step 5 of the sequential analysis.  (Dkt. No. 9).

**B.  Treating Physician**

Plaintiff alleges that the ALJ improperly discounted the opinions of plaintiff's treating physicians, Dr. Reiter and Dr. Peiris.  Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); *see also Filoramo v. Apfel*, 1999 WL 1011942, at *7 (E.D.N.Y. 1999) (holding that the ALJ properly discounted the assessment of a treating physician as it was inconsistent with opinions of other treating and consulting physicians).   The ALJ is required to accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is supported by the administrative record. *Schnetzler v. Astrue*, 533 F.Supp.2d 272, 285 (E.D.N.Y. 2008).   An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so. *Barnett v. Apfel*, 13 F.Supp.2d 312, 316 (N.D.N.Y. 1998).   When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to

7

determine the appropriate weight to assign, including:

> (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. 404.1527(d)(2).  The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2).  Further, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported.  20 C.F.R. § 404.1527(d)(3), 416.927 (d)(3); *see also Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007).  Similarly, the less consistent an opinion is with the record as a whole, the less weight it is to be given.  *Stevens*, 473 F.Supp.2d at 362; *see also Otts v. Comm'r of Social Sec.*, 249 Fed.Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

    **1.**    **Opinions of Dr. Reiter**

The Magistrate Judge found that "the RFC evaluation of plaintiff's circumstances recorded by Dr. Reiter, her orthopedic surgeon, are generally consistent with the ALJ's findings". Plaintiff objects to this conclusion and relies upon the definition of "light work" as set forth in the

Regulations.[5]  Plaintiff alleges that light work involves lifting no more than 20 pounds occasionally and 10 pounds frequently and, in contrast, Dr. Reiter limited plaintiff to lifting only 10 pounds occasionally and less than 10 pounds frequently.  (Dkt. No. 9, p. 2).  Therefore, plaintiff claims that the ALJ's findings were not entirely consistent with Dr. Reiter's conclusions and

On June 11, 2002, Dr. Reiter completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  Dr. Reiter opined that plaintiff could occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds. AT. 322.  Dr. Reiter concluded that plaintiff was able to stand, walk and sit without restriction.  AT. 322.  Moreover, Dr. Reiter found that plaintiff was unlimited in her ability to push/pull with her left arm, and could occasionally balance, kneel, crouch and crawl. AT. 323.  Dr. Reiter noted that plaintiff had limitations with regard to her ability to push and pull with her right dominant upper extremity and concluded that plaintiff had limited ability to reach in all directions overhead and a limited ability for gross manipulations but an unlimited ability for fine manipulations. AT. 324.  Dr. Reiter also noted that plaintiff had no visual, communicative or environmental restrictions. AT. 324.

The ALJ "accept[ed] the conclusions of Dr. Reiter" and found that plaintiff had the RFC:

---

[5] Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

to perform a wide limited range of light work in that impose [sic] no limitations on the claimant's ability to stand, sit and walk, and only requires her to occasionally lift up to 10 lbs., does not require climbing, ladders, scaffolds or any other activity that would require her to use her arms, no more than rare overhead reaching with the right dominant upper extremity, no more than occasional reaching in all directions with her right dominant upper extremity and no more than occasional frequent fine manipulations with the right, dominant upper extremity.

AT. 17.

Upon a review of the record, the Court finds that the ALJ applied the appropriate weight to Dr. Reiter's opinions and the Court agrees with the Magistrate Judge's conclusion that the ALJ's RFC assessment is "largely congruent" with Dr. Reiter's opinions.  The ALJ's RFC assessment is entirely consistent with Dr. Reiter's opinions and therefore, plaintiff's objection lacks merit.

**2.     Opinions of Dr. Peiris**

Plaintiff also contends that the ALJ improperly rejected Dr. Peiris' opinions.  Plaintiff does not offer any argument nor does plaintiff cite to any caselaw in support of this claim.  However, in plaintiff's prior Memorandum of Law, plaintiff argued that Dr. Peiris "agreed with the RFC Assessment performed by Mr. Mansfield, P.T., in finding that [] plaintiff was capable of less than sedentary work".

With regard to Mr. Mansfield's assessment and Dr. Peiris' opinion, the ALJ concluded:

In finding the claimant capable of performing a wide range of light work as outlined above, the Administrative Law Judge's [sic] carefully considered a residual capacity evaluation for the claimant completed by physical therapist, Mr. R. Mansfield, PT. As pointed out by the claimant's attorney, the opinion of a physical therapist is not recognized in the regulations as being an appropriate medical specialist.  The Administrative Law Judge further finds that the tepid endorsement of Mr. Mansfield's opinion regarding the claimant's residual functional capacity as given by the claimants treating primary care physician, Herman [sic] Peiris, M.D. pursuant to a letter by the physician dated January 21, 2003 in which he states that he had reviewed the report on medical assessment of ability to do work-related activities

> completed by Todd Mansfield in connection with the claimants Social Security claim and "I would tend to agree with his findings" is of little probative value since Dr. Peiris did not personally identifying [sic] function by function the claimant's abilities to perform work related activities, and specifically the physical condition or diagnoses that would limit each function.

AT. 19-20. The ALJ further noted that there was no indication that Dr. Peiris ever received Mansfield's full report where Mansfield stated that he suspected plaintiff was not "putting forth a full effort during testing". AT. 20. The ALJ discounted Mansfield's opinion and found the opinion of Dr. Reiter, "more persuasive".

After a review of the record, the Court finds that the ALJ properly applied the Regulations and afforded the appropriate weight to Mansfield's opinion and thus, to Dr. Peiris' opinion. Mansfield was plaintiff's physical therapist. As such, the ALJ was not required to afford his opinion controlling weight and adequately set forth the reasons for discrediting his opinion. *See Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir.1995) . Plaintiff does not object to that conclusion or to the weight the ALJ afforded to Mansfield's opinion.

The ALJ noted that Dr. Peiris gave a "tepid endorsement" to Mansfield's opinion. Upon a review of the record, the Court finds that the ALJ properly afforded little weight to Dr. Peiris' opinions and provided adequate reasons for doing so. First, the ALJ was required to examine the consistency of Dr. Peiris' opinion with the record as a whole. *See Sinda v. Comm'r of Social Sec.*, 2004 WL 1305882, at *10-11 (N.D.N.Y. 2004). A review of the record reveals that Mansfield's opinion, and thus, Peiris' opinion, was unsupported and contrary to the opinion rendered by Dr. Reiter and other medical opinions of record. Second, the ALJ noted that Dr. Reiter was the plaintiff's treating orthopedic surgeon and therefore, his opinion fell "squarely within the realm of his expertise". Under the Regulations, an ALJ will generally give "more weight to the opinion of

11

a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 416.927(d)(5); *Matos ex rel. Mota v. Barnhart*, 2007 WL 943654, at *11 (S.D.N.Y. 2007); *see also Sutherland v. Barnhart*, 322 F.Supp.2d 282, 291 (E.D.N.Y. 2004) (concluding that the ALJ has discretion to question the weight of a physicians findings based on his lack of specialty in a particular area). Finally, the ALJ noted that Reiter's opinion was based upon a "long-term, therapeutic relationship with the claimant". A review of the record reveals that plaintiff continuously treated with Dr. Peiris from March 1999 until April 2003. However, plaintiff only complained of right arm/shoulder and neck pain on three occasions - twice in April 1999 and once in September 2002. AT. 352 -353, 365. Dr. Peiris' notations from those visits are devoid of any reference to any physical limitations. In April 1999, Dr. Peiris merely stated that plaintiff should remain out of work until April 27th and prescribed Naprosyn and Flexeril. AT. 352. Dr. Peiris' notes of plaintiff's September 2002 are also devoid of any conclusions regarding plaintiff's limitations. AT. 365. Accordingly, Dr. Peiris' "agreement" with Mr. Mansfield's conclusions is wholly contradictory to Dr. Peiris' treatment notes.

Accordingly, this Court concurs with the Magistrate Judge that the ALJ's decision to reject the opinions of Dr. Peiris was supported by substantial evidence.

**C.    Residual Functional Capacity**

The ALJ determined that plaintiff has the residual functional capacity to perform a significant range of light work. AT. 21. Plaintiff objects to this finding reiterating the argument that the ALJ improperly rejected and/or discounted the opinions of plaintiff's treating physicians. (Dkt. No. 9, p. 3). As discussed above, the ALJ afforded the proper weight to the opinions of plaintiff's treating physicians.

12

> Residual functional capacity is:
>
> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of [the required] activities. *Martone v. Apfel*, 70 F.Supp.2d 145, 153 (N.D.N.Y. 1999) (citing §§ 404.1567(b), 416.967(b)).

As previously discussed, the ALJ's RFC determination is supported by the opinion of plaintiff's treating orthopedic surgeon. Moreover, plaintiff's ability to perform light work is further supported by her testimony during the hearing. Plaintiff testified that she was able to shower, dress, cook, grocery shop and do some housework. AT. 17, 471. Plaintiff also testified that she was able to use a computer to "surf the net" and shop online and that she babysat for her granddaughter. AT. 17, 472.

Thus, the Court is satisfied that the ALJ employed the correct legal standards and substantial evidence exists to support the ALJ's decision with regard to plaintiff's RFC to perform light work.

**D.     Vocational Expert**

Plaintiff alleges that the vocational expert was presented with an improper hypothetical based upon the ALJ's RFC. Plaintiff objects to the ALJ's reliance upon the jobs cited by the vocational expert and alleges that the based upon the Dictionary of Occupational Titles, each of the four jobs cited require the need to use the upper extremities. Plaintiff claims that Dr. Reiter acknowledge plaintiff's limitation of use with her upper extremity and therefore, reliance upon those four jobs was misplaced. (Dkt. No. 9, p. 4-5).

At the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's residual functional capacity, age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960. Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). Sole reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's limitations. *Id*. at 606. For example, use of the grids as the exclusive framework for making a disability determination may be precluded where, as here, plaintiff's physical limitations are combined with non-exertional impairments which further limit the range of work he can perform. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603.

A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *Bosmond v. Apfel*, 1998 WL

851508, at *8 (S.D.N.Y.1998) (citation omitted); *see also De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984).  If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. 1996).

The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F. Supp. 497, 503 (S.D.N.Y. 1996).  Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In this case, the ALJ asked the vocational expert whether there were any jobs existing in substantial numbers that a person with plaintiff's vocational and educational background, and with the following limitations could perform:

> capable of lifting up to 10 pounds occasionally.  Is unable to climb anything like ladders or scaffolding where the use of her arms would be involved.  There are no standing or sitting limitations.  There are some restrictions on the right upper extremity (right hand dominant) and that they could only rarely do any overhead reaching.  They could only occasionally reach in other directions with the right upper extremity.  And only occasionally make repetitive use of the right upper extremity.  AT. 482-484.

The vocational expert responded that a person with this set of assumptions could perform several jobs, including counter-clerk (photo finishing), furniture clerk, call-out operator and surveillance system monitor.  AT. 484-486.  The expert stated that the jobs of counter-clerk (photo finishing) and furniture clerk were light based on standing and required lifting/carrying of

less than 10 pounds.  AT. 485.   The positions of call-out operator and surveillance system monitor were sedentary.  AT. 486-487.

Having reviewed the record, the Court finds that the hypothetical submitted to the vocational expert is supported by substantial evidence.  In this case, the ALJ presented the vocational expert with plaintiff's RFC which the ALJ based upon Dr. Reiter's opinions.   As previously discussed, the ALJ applied the appropriate weight to the treating physicians' opinions and the RFC is based upon substantial evidence.  Thus, the Court concludes that the hypothetical posed to the vocational expert is supported by the record.

The Court further finds plaintiff's additional objections to be without merit.   Plaintiff claims that the jobs cited by the vocational expert "demonstrate the need to use the upper extremity" and therefore, reliance upon those jobs was misplaced.  As previously discussed, the RFC determination and hypothetical posed to the expert were supported by substantial evidence, including Dr. Reiter's opinions.  Indeed, the hypothetical posed to the expert included "only occasional" overhead reaching.  Moreover, the Court agrees with the Magistrate Judge's conclusion that this argument was "devoid of evidentiary or legal support" and that plaintiff offered, "naked assertion that the jobs . . . would out of necessity require usage of upper extremities".  (Dkt. No. 8, p.28).  Accordingly, the Court concludes that the ALJ applied the appropriate legal standards and properly relied upon the testimony of the vocational expert.

## VI.    CONCLUSION

Based upon the foregoing, and the reasons stated in the Report and Recommendation, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge David E. Peebles is **ADOPTED** in its entirety; and it is further

**ORDERED** that the complaint is **DISMISSED**.

**IT IS SO ORDERED.**

Date:  July 7, 2009

Norman A. Mordue
Chief United States District Court Judge